J-S20011-17
J-S20012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DYSHAWN TYRONE MACK | |
| | No. 2006 EDA 2016 |

Appeal from the Order June 28, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002402-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MALIK DION CLARK | |
| | No. 1977 EDA 2016 |

Appeal from the Order June 28, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000892-2015

BEFORE: BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED JUNE 13, 2017**

The Commonwealth appeals from the June 28, 2016 order denying, in part, its motion *in limine* to preclude Defendants, Dyshawn Tyrone Mack and Malik Dion Clark, from presenting an eyewitness identification expert, and

granting, in part, Defendants' motion *in limine* to limit the scope of the expert testimony offered by the Commonwealth regarding Defendants' gang affiliation.[1]  We affirm in part and reverse in part.

This appeal arises from an altercation which occurred during the early morning hours on July 6, 2015.  At that time, a group of friends were having a party on Prospect Street in East Stroudsburg, Monroe County.  During the gathering, a group of uninvited individuals, ostensibly including Defendants, entered the residence.  After being asked to leave, the uninvited guests attacked the attendees.  Defendants allegedly assaulted Frankie Lomucio, who sustained severe injuries, including brain damage which left him in a coma for eight days.  The attack was witnessed by a number of people within the residence, several of whom subsequently identified Defendants as Mr. Lomucio's attackers.

Based on the foregoing, Defendants were each charged with attempted murder, aggravated assault, recklessly endangering another person, simple assault, and conspiracy.  The cases were consolidated, and prior to trial, both the Commonwealth and Defendants filed motions *in limine*.  The Commonwealth sought to preclude Defendants from offering the expert testimony of Jonathan P. Vallano, Ph.D., regarding the unreliability of

_____

[1] Since these consecutively listed appeals emerge from a consolidated case in the court below and raise identical issues, we consolidate the above-captioned cases *sua sponte* for ease of disposition.

eyewitness identification. Defendants filed a motion *in limine* requesting that the court bar the testimony of a supposed "gang-expert," Trooper William Patton, whom the Commonwealth planned to offer during trial.

On June 28, 2016, the day trial was scheduled to commence, the court held a hearing on the parties' motions *in limine*. Neither party's expert was in attendance. The court heard argument and reviewed the expert reports. The court rejected the Commonwealth's attempt to entirely exclude Defendants' expert on eyewitness testimony, but limited the scope of his testimony. Specifically, the court ruled that Dr. Vallano could not testify regarding any witness's credibility, that he could not offer testimony for which there was no professional consensus, that he could not assess the facts of the case, and that he would be constrained to testimony that was educational in nature regarding the principles of eyewitness identification.

The court also granted, in part, Defendants' motion *in limine* seeking to limit Trooper Patton's testimony to the facts presented during the case and information available to both parties prior to trial. In his expert report, Trooper Patton outlined details of an ongoing investigation into gang activity in Monroe County. He noted that, in his role as a member of that task force, he has become acquainted with gang activity within the area, and has cultivated numerous confidential informants with knowledge of the inner-workings of local gangs. Based on this experience and information that he obtained from his unnamed contacts, Trooper Patton opined that Appellants

were affiliated with local gangs. The court precluded the trooper from testifying to statements made by unnamed or unidentified sources. As to each ruling, the court retained discretion to modify its decisions as the evidence was presented during trial.

After the court issued a written order memorializing its determination, the Commonwealth filed a timely appeal as of right in each action pursuant to Pa.R.Crim.P. 311(d). As a result, the court dismissed the jury and stayed the proceedings below. The Commonwealth complied with the court's order to file a Rule 1925(b) concise statement of matters complained of on appeal, and the court filed its Rule 1925(a) opinion. This matter is now ready for our review.

The Commonwealth raises two issues for our review:

1. Did the trial court err in limiting the content and materials on which Trooper William Patton could rely on while testifying as an expert in gang activity and affiliation, excluding any testimony or opinion based on hearsay information gained through confidential informants, third parties, or any other evidence not otherwise introduced at trial, contrary to Pennsylvania Rules of Evidence 703 and 705, along with prevailing case law?

2. Did the trial court err in permitting the testimony of an expert on eyewitness identification when the Commonwealth's case does not rest solely on eyewitness identification, and [Defendants'] expert's report is equivocal and contradictory, contrary to the dictates of *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), and the requirements of Pennsylvania Rule of Evidence 702.

Commonwealth's brief at 7.

As a preliminary matter, we must determine whether the issues raised in this interlocutory appeal are properly before us. Generally, this Court exercises jurisdiction only over final orders. 42 Pa.C.S. § 742. However, the Commonwealth may invoke this Court's jurisdiction under Rule 311(d). That Rule provides:

> In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).

Even when the Commonwealth certifies that an order will terminate or substantially handicap the prosecution, we do not "accept blindly the Commonwealth's certification of substantial hardship." **Commonwealth v. Woodard**, 136 A.3d 1003, 1005 (Pa.Super. 2016) (citation omitted). Rather, we will look to the issue in question to determine whether it implicates the Commonwealth's constitutional responsibility to prove each element of the crime beyond a reasonable doubt, and thereby, significantly handicaps the **prosecution's case**. **See Commonwealth v. Cosnek**, 836 A.2d 871 (Pa. 2003). In this vein, the High Court held that the Commonwealth's right to interlocutory appeals "does not extend to appealing the admission of defense evidence." **Id**. at 876; **See also Commonwealth v. White**, 910 A.2d 648 (Pa. 2006) (clarifying the holding in **Cosnak**, and applying Rule 311(d) to certain non-evidentiary rulings

- 5 -

terminating or substantially handicapping the Commonwealth's case); ***Woodard***, ***supra*** (citing ***Cosnak*** and examining ***White*** in finding Rule 311(d) did not apply to denial of motion to consolidate).

Here, the Commonwealth attached a certification to its notice of appeal contending that the court's order terminated or substantially handicapped its case. Before this Court, the Commonwealth raised a challenge against the court's decision to limit the testimony of its expert, Trooper Patton. The Commonwealth also disputed the admission of testimony by Defendants' expert on eyewitness identification.

First, insofar as the Commonwealth raises a claim against the admission of Defendants' expert testimony, we find that issue is not properly before us in light of our High Court's holding in ***Cosnek***, ***supra***, that defense evidence does not hamper the Commonwealth's ability to present its case or meet its evidentiary burden. ***Cosnek***, ***supra***. Second, as the Commonwealth's first issue suggests that the trial court erred in limiting the scope of its own expert testimony, which assails the Commonwealth's ability to meet its evidentiary burden, we find that we can exercise jurisdiction over that claim pursuant to Rule 311(d) and the Commonwealth's certification. Hence, we will consider the merits of the Commonwealth's first issue alone.

Our standard of review of the denial or grant of a motion *in limine* is as follows:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Ivy***, 146 A.3d 241, 250 (Pa.Super. 2016) (citation omitted).

The Commonwealth argues that, under Pa.R.E. 703,[2] Trooper Patton was permitted to testify regarding facts he was made aware of in formulating his expert opinion, including hearsay information provided by confidential informants. The Commonwealth maintains that such foundational information was required under Rule 705,[3] and moreover, that both rules clarify that when an expert does testify to otherwise inadmissible evidence, the trial court may "instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive

_____

[2] Pennsylvania Rule of Evidence 703 reads,

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

[3] Pennsylvania Rule of Evidence 705 reads, "If an expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705.

evidence." Commonwealth's brief at 16; Pa.R.E. 703 & 705, *comment*. Under the Commonwealth's understanding of the court's ruling, the court erred since Trooper Patton would be prohibited from rendering his expert opinion because it was based, in part, on hearsay.

In its Rule 1925(a) opinion, the trial court clarified its evidentiary ruling, admitting that it was "not as crisp as it could be," and attributed any confusion caused by the order to the late filing of the motions and the failure of the Commonwealth's expert to be present to answer questions regarding his one-page report. Trial Court Opinion, 9/15/16, at 15-16. The court explained the terms of its order, observing that it did not bar Trooper Patton from offering "opinions and conclusions based on his own knowledge, experience, education, training, and investigation into gang activity in the area." *Id*. at 15. It stated that its ruling "did not unduly limit or restrict the bases, hearsay or otherwise[,] on which the gang expert could reach his own opinions or render his own conclusions about relevant matters," including, "the meaning and significance of the conduct in which [Defendants] and the others with whom they crashed the party engaged[.]" *Id*. 15-16. Rather, the court merely proscribed Trooper Patton from recounting statements made by confidential informants regarding Defendants' gang affiliation as a "surrogate fact witness for information . . . he may have uncovered in his own investigations[.]" *Id*. at 16.

Here, contrary to the Commonwealth's position, the trial court clarified that it did not forbid Trooper Patton from offering his expert opinion. Nonetheless, the court's order is not the model of clarity, and insofar as it can be read to bar Trooper Patton from offering his expert opinion, we find that the trial court erred in that regard. However, the trial court explained that it intended to constrain the trooper only from repeating hearsay statements made by confidential informants **for substantive purposes**. *See* Trial Court Opinion, 9/15/16, at 16; Pa.R.E. 703 & 705, *comment*.

Assuming Trooper Patton is qualified as an expert at trial, his potential testimony is subject to standard evidentiary principles, including Rules 703 and 705. As properly outlined above, Rule 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. Such facts or data need not be admissible; however, the rule explicitly requires that other experts in the particular field must "reasonably rely on those kinds of facts or data in forming an opinion[.]" *Id*. Thus, if the trial court accepts Trooper Patton's qualifications, he will be permitted to explain how he ultimately arrived at his expert opinion that Appellants were affiliated with a gang, subject to these constraints. Insofar as the court's order barred that result, it was an abuse of discretion.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2017