J-A16022-24

2024 PA Super 164

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JOSEPH LAPAGLIA | : | |
| | : | |
| Appellant | : | No. 1332 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 14, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002468-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JOSEPH LAPAGLIA | : | |
| | : | |
| Appellant | : | No. 1333 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 14, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002471-2019

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY MURRAY, J.:                                    **FILED: July 31, 2024**

In these consolidated appeals, Michael Joseph Lapaglia (Appellant) appeals from the judgments of sentence entered after a jury convicted him of burglary, criminal trespass, theft by unlawful taking, and receiving stolen

property at CP-65-CR-2471-2019 (No. 2471);[1] and theft by unlawful taking

and receiving stolen property at CP-65-CR-2486-2019 (No. 2486).[2] We

affirm.

The trial court ably summarized the factual and procedural history of

these cases:

> On April 25, 2019, [Appellant] was charged by criminal complaint at [No. 2471] with [the above offenses]. This was in connection with a break-in at the home of Patricia and David Frischman [(the Frischmans)] on April 23, 2019. Jewelry and coins were stolen.
>
> During the ongoing burglary investigation, Penn Township Detective Patrick Schwer [(Detective Schwer)] learned that on April 20, 2019, three (3) days prior to the April 23rd break-in, [Appellant] had pawned several items belonging to [the Frischmans] at Max-Point Gold Buyers. N.T., 11/16/21, at 115. As a result, [Appellant], on June 10, 2019, was charged by criminal complaint at [No. 2486] with [the above offenses]. [Westmoreland County assistant public defender Jennifer DeFlitch, Esquire (trial counsel), represented Appellant in both cases.]
>
> At [No. 2471], [Appellant], on May 21, 2019, requested and was granted a continuance of the preliminary hearing. Both cases were waived for court on June 11, 2019. On July 9, 2019, the Commonwealth gave notice that it was consolidating the two (2) cases for purposes of trial.
>
> On July 7, 2019, [Appellant] filed an Informal Request for Discovery. The Commonwealth provided discovery responses on August 29, 2019. At [Appellant]'s request, the cases were initially scheduled for a guilty plea on September 6, 2019. During the Call [of the List], the parties indicated they were prepared to proceed and requested that the cases remain on the November 2019 trial

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 3503(a)(1)(ii), 3921(a), 3925(a).

[2] 18 Pa.C.S.A. §§ 3921(a), 3925(a).

list. N.T., 10/18/19, at 3-4. The cases were not reached; therefore, they were listed for the January 2020 trial term.[FN1]

---

[FN1] In Westmoreland County, there is one (1) criminal trial week held per month. Criminal cases are assigned to specific common pleas judges from the start and are separated into two (2) [zones] according to magisterial districts. North zone cases are heard by the assigned judge during even-numbered months, and south zone cases (such as the cases at bar) are heard by him or her during odd-numbered months. Thus, if a south zone case is listed as ready before a judge during an odd month, and it is not reached due to a continuance or because older cases are called ahead of it, it moves onto the judge's next *odd* month list rather than the next month in general.

---

At the January 6, 2020[,] Call of the List, the Commonwealth asked for a continuance because the affiant, Detective Schwer, had been injured at work and was [] unavailable until the May trial term. Order, 1/6/20. Despite [Appellant]'s objection, the continuance was granted. *Id.*

On March 17, 2020, Westmoreland County President Judge Rita Hathaway issued an Emergency Order due to the COVID-19 pandemic. All court calendar appearances were canceled, and all the time limitations were tolled until further order of court. *See* Order, 4/3/2020. The Emergency Order "expired" on May 8, 2020. *See* Order, 6/8/2020. However[,] south zone trials (such as the case at bar) were not scheduled again until September 2020.

By Order of Court dated September 4, 2020, the cases were listed for the September 2020 trial term. However, despite the parties' assurances that they were ready to proceed, the cases were not reached. As a result, they were rescheduled to the November 2020 trial term. On November 16, 2020, [Appellant] filed a Petition for Dismissal Pursuant to Pa.R.Crim.P. 600[,] and requested that argument be scheduled for the next available criminal motions court. The cases were removed from the November 2020 trial list and rescheduled to the March trial term.[FN2] By Order of Court dated March 2, 2021, a Rule 600 hearing was scheduled for March 8, 2021….

[FN2] Pursuant to Judge Hathaway's Administrative Order of Court dated January 4, 2021 (amended for purposes of clarification on January 14, 2021), no jury trials were scheduled for January 2021[,] due to heavy COVID-19 [infection] numbers. For purposes of Rule 600, Judge Hathaway noted that the time was to be excludable. The Administrative Order of January 4, 2021[,] was rescinded as of January 31, 2021, per Judge Hathaway's Order of Court dated January 29, 2021.

At the March 8, 2021[,] Rule 600 hearing, the [c]ourt denied the Rule 600 motion, advising that most of the delay in the matter was COVID-related. On April 13, 2021, [Appellant] requested a continuance and asked that the cases be rescheduled to the July trial term. Order, 4/13/21. At the June 29, 2021[,] Call of the List, [Appellant] asked for another continuance. The [c]ourt entered an order granting [Appellant]'s request; however, it noted that "no further continuances are to be granted by either side." Order, 6/29/21. At the August 31, 2021[,] Call of the List, [Appellant] requested yet another continuance. The [c]ourt denied [Appellant]'s request and scheduled the cases for trial. Order, 8/31/21. The cases were not reached, however, and as a result, they were rescheduled for the November 2021 trial term.

The case was called for trial on November 15, 2021. [Trial] counsel [] submitted another Petition for Dismissal Pursuant to Pa.R.Crim.P. 600, but it was denied. [Appellant] then requested a continuance, indicating that he wanted to terminate [trial] counsel. *See* N.T., 11/15/21, 6-12. Both the continuance request and the request for new counsel were denied.

Trial Court Opinion, 12/18/23, at 1-4 (emphasis in original; two footnotes in original (renumbered); remaining footnotes omitted).

On November 17, 2021, following a three-day trial, a jury convicted Appellant of all charges. On March 14, 2022, the trial court sentenced Appellant to an aggregate five to ten years in prison. On March 25, 2022, Appellant filed an untimely post-sentence motion. The motion was denied by

operation of law, and Appellant appealed. This Court issued a rule to show cause as to why the appeal should not be quashed as untimely.[3] Receiving no response, we quashed the appeal on September 20, 2022.

On April 10, 2023, Appellant filed a counseled petition pursuant to the Post Conviction Collateral Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking, *inter alia*, reinstatement of his post-sentence motion and direct appeal rights. On October 17, 2023, the trial court granted Appellant's petition in part, and reinstated Appellant's appellate rights. Appellant did not file a post-sentence motion, and the instant, *nunc pro tunc* appeal followed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents the following issues:

I. Whether the trial court erred in twice denying [] Appellant's request to dismiss the charges pursuant to Pa.R.Crim.P. 600[,] despite more than 365 includable days elapsing prior to the beginning of his jury trial?

II. Whether the trial court erred in denying [] Appellant's request for new counsel and to continue his jury trial on the basis that it was mutually-agreed that the relationship between [] Appellant and [trial] counsel was irretrievably broken?

Appellant's Brief at 2.

In his first issue, Appellant alleges Rule 600 violations at both No. 2471 and No. 2468. He argues there are only "126 excludable days due to the

---

[3] An untimely post-sentence motion does not toll the 30-day appeal period. *See* Pa.R.Crim.P. 720(A)(3). As a result, Appellant's August 22, 2022, notice of appeal was facially untimely.

- 5 -

defense." ***See id.*** at 9. Appellant asserts that on the date of his first Rule 600 hearing, "more than 500 days of unexcused Rule 600 time had already elapsed." ***Id.*** at 10. Finally, Appellant maintains the Commonwealth failed to prove it acted with due diligence in bringing Appellant to trial. ***See id.*** at 12-14.

"In general, a trial court's denial of a Rule 600 motion is reviewed for an abuse of discretion; however, it is subject to plenary review when the dispositive question implicates legal issues." ***Commonwealth v. Lear***, 290 A.3d 709, 718 (Pa. Super. 2023) (citing ***Commonwealth v. Harth***, 252 A.3d 600, 614 n.13 (Pa. 2021)). "The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party." ***Commonwealth v. Brown***, 281 A.3d 320, 325 (Pa. Super. 2022) (citation omitted).

"Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases." ***Commonwealth v. Womack***, ___ A.3d ___, 2024 WL 2789160, *11 (Pa. filed May 31, 2024) (quoting ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012)). Rule 600 provides, in part:

**(A) Commencement of Trial; Time for Trial**

> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \*

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

\* \* \*

(3)(a) When a judge or issuing authority grants or denies a continuance:

\* \* \*

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance.  The judge shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

\* \* \*

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A) at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated….

Pa.R.Crim.P. 600.

When conducting a Rule 600 analysis, our Supreme Court has explained:

> To determine whether Rule 600 has been violated, a "court must first calculate the 'mechanical run date,' which is 365 days after the complaint has been filed," and then must "account for any 'excludable time' and 'excusable delay.'"[4]  ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013).  "For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation."  Pa.R.Crim.P. 600(C)(1).

> To this end, Rule 600 establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; and (2) the Commonwealth must have failed to exercise due diligence. Otherwise, the delay is excluded from the calculation of the run date.  Put differently, **where delay is not caused by the Commonwealth or delay caused by the Commonwealth is not the result of lack of diligence, it must be excluded from the computation of the Rule 600 deadline**.  "Due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."  ***Commonwealth v. Selenski***, [] 994 A.2d 1083, 1089 ([Pa.] 2010).

---

[4] In ***Commonwealth v. Wiggins***, 248 A.3d 1285 (Pa. Super. 2021), we observed the General Assembly's 2013 replacement of "old" Rule 600 with "new" Rule 600 "eliminated the distinction between these two buckets of removable calculable time[,]" and any periods of delay caused by the Commonwealth "form[] the basis of what is known as 'includable time.'" ***Wiggins***, 248 A.3d at 1288-89; ***see also Lear***, 290 A.3d at 718 n.5 ("Before Rule 600 was replaced in 2013, our cases distinguished between 'excludable time' and 'excusable delay.'  Rule 600 now eliminates this distinction." (citations omitted)).

***Commonwealth v. Johnson***, 289 A.3d 959, 981-82 (Pa. 2023) (footnote and emphasis added).  We have further observed:

> It would certainly not serve the dual purpose of Rule 600 if a defendant could demand a jury trial … during a time when it is impossible for the Commonwealth to conduct a jury trial, and determine that the resulting delay was not excusable under the Rule.

***Commonwealth v. Faison***, 297 A.3d 810, 824 (Pa. Super. 2023); ***see also Commonwealth v. Marnoch***, \_\_\_ A.3d \_\_\_, 2024 WL 2716427, \*7-8 (Pa. Super. filed May 28, 2024) ("[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." (citation omitted)).

Instantly, the Commonwealth filed criminal complaints at No. 2471 on April 25, 2019, and at No. 2486 on June 10, 2019.  The trial court correctly observed that "[b]y June 11, 2019, the day the cases were waived to court, the cases tracked identically."  Trial Court Opinion, 12/18/23, at 2 n.3. Accordingly, we begin our analysis of Appellant's claim by reviewing the timeline of No. 2471, as failure to establish a Rule 600 violation at this docket number defeats his claim at No. 2486.

At No. 2471, the mechanical run date for Rule 600 was April 24, 2020. ***See*** Pa.R.Crim.P. 600(A)(2)(a).  On November 15, 2021, trial commenced on both cases.  Thus, 935 days elapsed before the Commonwealth brought Appellant to trial—570 days beyond the mechanical run date.  ***See id.***

At the March 8, 2021, Rule 600 hearing, the prosecutor acknowledged the Commonwealth requested a continuance from January to May 2020, "because the affiant was unavailable due to surgery, and [the Penn Township Police Department does not] have a light duty position that would have allowed him to [attend] trial." N.T., 3/8/21, at 3. She noted, however, that President Judge Hathaway's emergency administrative order tolled Rule 600 beginning in March 2021. *Id.* Significantly, trial counsel agreed the only delay caused by the Commonwealth was from January to March 2020. *See id.* at 5.

The trial court cogently detailed its reasoning for denying Appellant's Rule 600 motions in its Rule 1925 opinion:

> First, there were 21 days of exclud[a]ble time based on [Appellant]'s request for continuance of the preliminary hearing on May 21, 2019. The fact that [Appellant] requested that [his cases] be scheduled for a tentative plea hearing[,] as opposed to trial[,] caused a further delay. Discovery had been submitted by the Commonwealth by the end of August 2019, and if [the case] had been scheduled for a trial, as opposed to a plea, the case would have been called during the September trial term, which began on September 9, 2019. Instead, a jury trial was first requested on September 6, 2019, after the September call of the list, and therefore it was impossible to call the case until the beginning of the November trial term, on November 4, 2019. Thus, [Appellant] was responsible for another 59 days of delay.
>
> Both parties reported the case as ready during the November 2019 trial term. But the case was not reached because of the [c]ourt's busy schedule. **The Commonwealth had acted with due diligence up to that point by having forwarded discovery and having witnesses present**. The delay, then, from November 4, 2019[,] to January 13, 2020, represents an excusable delay of 70 days.

- 10 -

On January 6, 2020, the Commonwealth requested a continuance until May[,] because the affiant was injured. The Commonwealth argues that this delay is excusable because it was medically necessary. [Appellant] disagree[d], and [made] a timely objection to the continuance request at the time. Since it is not necessary to the ultimate resolution of the Rule 600 issue, the Court will assume *arguendo* that [Appellant] is correct, and accept that this led to a Commonwealth delay from January 13, 2020, the first day of the trial term, until March 17, 2020—the day of the COVID-19 emergency order.

**From March 17, 2020**[,] **to September 21, 2020, it would have been impossible for** [**Appellant**] **to proceed to trial. There were no south zone jury trials held in Westmoreland County during this period of time due to the COVID-19 pandemic**. … **Thus, there was another 188 days of excusable delay**.

**During the September trial term, the case was again not reached despite both parties indicating readiness**. It thus could not be tried before November 16, 2020—the first day of the November trial term. The excusable delay was 56 days. The case was not tried in November 2020 because [Appellant] filed his rule 600 motion, which removed the case from the trial list. "[C]ourts have found that delays caused by pretrial motions constitute exclud[a]ble time where the pretrial motion renders the defendant unavailable." ***Commonwealth v. Hill***, 736 A.2d 578[, 585] (Pa. 1999). The pretrial motion hearing was set for March 8, 2021. [Appellant] could argue that the pre-trial motion should have been set earlier, but it would not have mattered because the [c]ourt canceled the January 2020 trial term due to COVID-19 issues. **Both parties indicated readiness for trial during the March 2021 trial term**, which ran from March 15 through March 19, 2021, but an older case was called. So there was excusable delay and/or exclud[a]ble time from November 19, 2020[,] to the first day of the May 2021 trial term (May 17, 2021) for a period of 179 days.

[Appellant] then requested continuances for the May, July, September, and November 2021 trial terms. Continuances were granted for the May and July trial terms. The [c]ourt denied [Appellant]'s requests for the September and November terms, and the trial ultimately began on November 15, 2021. 182 days

in exclud[a]ble time/excusable delay took place during that time period.

The total number of days that are exclud[a]ble[] is 755. If these days are added to the mechanical run date of April [24], 2020, one gets an adjusted run date of May [19], 2022. Since the case was tried more than six (6) months before the adjusted run date, there was no Rule 600 violation.

Trial Court Opinion, 12/18/23, at 10-12 (emphasis added).

Our review of the record and applicable authority largely supports the trial court's findings and analysis. However, the certified record on appeal does not include President Judge Hathaway's administrative orders declaring judicial emergencies in response to the COVID-19 pandemic, and only three emergency orders and an undated declaration are publicly accessible through the Westmoreland County government website.[5]

The undated declaration announced a judicial emergency in Westmoreland County from March 17, 2020, through May 8, 2020. **See** Declaration at 1. On April 24, 2020, President Judge Hathaway ordered that "[a]ll statewide procedural and administrative rules involving time calculations within the 10th Judicial District for the … taking of judicially mandated action are suspended beginning March 17, 2020[,] until further order of court." Order, 4/24/20, at 4. On June 8, 2020, President Judge Hathaway ordered the expiration of the local judicial emergency, effective May 8, 2020. **See**

---

[5] **See** https://www.westmorelandcountypa.gov/documentcenter (last visited June 10, 2024).

Order, 6/8/20, at 1. Notwithstanding the purported expiration of the local judicial emergency on May 8, 2020, we have recognized our Supreme Court's declaration of the statewide judicial emergency "explicitly suspended time calculations pursuant to Pa.R.Crim.P. 600(C)" through June 1, 2020. **Faison**, 297 A.3d at 823. President Judge Hathaway reinstated the judicial emergency on December 8, 2020, through February 1, 2021, for the limited purpose of suspending all criminal and civil jury trials. **See** Order, 12/8/20, at 1.

When analyzing the effect of emergency orders on Rule 600 calculations, we have stated: "If an order unambiguously suspends Rule 600 without qualification, then the period of the suspension is added to the run date without considering the Commonwealth's diligence." **Commonwealth v. Malone**, 294 A.3d 1247, 1249 (Pa. Super. 2023) (quoting **Lear**, 290 A.3d at 719). However, if the emergency order characterizes the delay as a "court postponement" or judicial delay, then the Commonwealth must prove that it acted with due diligence. **See id.**; **see also Harth**, 252 A.3d at 614 ("[D]ue diligence must be proven by the Commonwealth, and assessed by the court, before 'judicial delay' becomes a consideration in the time calculation for Rule 600." (citation omitted)).[6]

---

[6] Here, the trial court did not assess the Commonwealth's due diligence between June 1, 2020, and September 21, 2020, because "there were no south zone jury trials … during this period of time due to the COVID-19 pandemic." Trial Court Opinion, 12/18/23, at 11. No emergency order unambiguously excluded this time period from Rule 600 calculations. *(Footnote Continued Next Page)*

According to the orders outlined above, President Judge Hathaway's declaration of a local judicial emergency (which unambiguously suspended Rule 600) extended from March 17, 2020, through May 8, 2020, and December 8, 2020, through February 1, 2021. This reduced the period of excludable time between March 17, 2020, and September 21, 2020, from 188 days to 52 days. However, recognizing our Supreme Court's declaration extended the COVID emergency to June 1, 2020, *see Faison*, 297 A.3d at 823, the period of excludable time amounts to 76 days. Factoring in these corrections to the trial court's calculation results in an adjusted run date of January 27, 2022. Thus, because the Commonwealth brought Appellant to trial more than two months before his adjusted Rule 600 run date, his first issue merits no relief. *See Brown*, 281 A.3d at 325 ("An appellate court must view the facts in the light most favorable to the prevailing party.").

In his second issue, Appellant argues the trial court abused its discretion when it denied his requests for a continuance to obtain new counsel. Appellant's Brief at 14. Appellant claims his relationship with trial counsel was irretrievably broken, and the "friction, personal strife, and lack of diligent effort on the part of [trial] counsel … were all plain on the record prior to the beginning of [] Appellant's jury trial." *Id.* at 21.

---

Nevertheless, we need not remand for the trial court to make a finding as to the Commonwealth's diligence, because the Commonwealth brought Appellant to trial prior to the adjusted run date, even if this time were attributable to the Commonwealth (discussed *infra*).

Our standard of review is well settled:

[T]he decision to deny a request for a continuance is within the sound discretion of the trial court. Further, a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record….

*Commonwealth v. Hernandez*, 230 A.3d 480, 484 (Pa. Super. 2020)

(quoting *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa. Super. 2009)).

Although criminal defendants are entitled to counsel of their own

choosing, that right

must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. At the same time, however, we have explained that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

*Id.* (quoting *Commonwealth v. McAleer*, 748 A.2d 670, 673-74 (Pa. 2000)).

This Court has set forth the following factors to consider on appeal from a trial court's ruling on a continuance motion to obtain private representation: (1) whether the court conducted an extensive inquiry into the underlying causes of defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current counsel constituted irreconcilable differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time.

- 15 -

*Id.* at 485 (citation omitted).

Instantly, Appellant requested continuances of his trial to obtain new counsel at jury selection, and on the first day of trial. N.T., 11/15/21, at 6; N.T., 11/16/21, at 4-5. The trial court explained its reasons for denying Appellant's requests:

> In this case, prior to jury selection, the [trial c]ourt conducted an *ex parte*, *in camera* review with [Appellant] and [trial] counsel … to determine [Appellant]'s reasons for seeking new counsel. [Appellant] complained that he had only been given partial discovery and that [trial counsel] had only met with him for 15 minutes to review it. N.T., 11/12/21, at 16. Specifically, he indicated that he did not have documentation of the entire photo lineup that was done shortly after the crime. *Id.* at 16. [Trial] counsel responded that her secretary had copied all of the Commonwealth's discovery responses for [Appellant] in 2019, and [trial] counsel was willing to re-copy the photo lineup and review it with him that evening. *Id.* at 18. [Appellant] wanted [trial counsel] to file a suppression motion based on a problem he saw with the lineup, but [trial counsel] advised that she had discussed this issue with her more experienced associates, that there was nothing in the lineup to indicate that it was suggestive, and that her plan was to raise any issues with the lineup during cross-examination of the police. *Id.* at 19. [Appellant] was also upset that he had only met with [trial counsel] three (3) times in th[e] past five (5) months. *Id.* at 20. [Trial counsel] advised that they had actually met four (4) times. *Id.* at 21. When asked what he would have hoped to accomplish through more or longer meetings, [Appellant] could only state that he wanted a suppression motion to be filed based on the lineup issue. *Id.* at 21-23. [Trial] counsel confirmed that she was prepared for trial. *Id.* at 23.
>
> ….
>
> The next morning, before the swearing in of the jurors …, [trial] counsel renewed her request to continue the case and withdraw, indicating that she was being required to represent a

- 16 -

client who did not want her to represent him. N.T., 11/16/21, at 4. ….

The [trial c]ourt maintains that it was proper to deny the continuance requests and the withdrawal/termination requests made by [Appellant] and [trial counsel]. …. [Appellant's] reasons for wanting to discharge [trial] counsel were not valid, as neither he nor [trial counsel] could identify any prejudice that might befall [Appellant] from having to try the case in November 2021 with [trial counsel]. …

Trial Court Opinion, 12/18/23, at 14-16 (citations modified; footnotes omitted).

Our review confirms the trial court's rationale is supported by the record and free of legal error. Appellant made several requests to continue his cases in the months leading to trial; his request to obtain new counsel occurred on the eve of trial, after the Commonwealth had arranged for its witnesses to testify; and he had not retained private counsel. *See Hernandez*, 230 A.3d at 485; *see also Commonwealth v. Floyd*, 937 A.2d 494, 497 (Pa. Super. 2007) ("[T]he right to appointed counsel does not include the right to counsel of the defendant's choice." (citation omitted)). Further, "where, as here, the defendant and his counsel offer competing contentions as to the readiness of defense counsel for trial, **it is for the trial court to decide whose portrayal of defense counsel's degree of preparedness is more accurate**." *Hernandez*, 230 A.3d at 486 (citation omitted; emphasis in original). Accordingly, Appellant's second claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/31/2024